SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
GREG S. LABATE, Cal. Bar No. 149918
ERIC T. ANGEL, Cal. Bar No. 293157
glabate@sheppardmullin.com
eangel@sheppardmullin.com
650 Town Center Drive, 10th Floor
Costa Mesa, California 92626-1993
Telephone:  714.513.5100
Facsimile:   714.513.5130

Attorneys for Defendants
MARRIOTT INTERNATIONAL, INC and
RESIDENCE INN BY MARRIOTT, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSHUA CAHILL, individually, and on behalf of other members of the general public similarly situated,<br><br>Plaintiff,<br><br>    v.<br><br>MARRIOTT INTERNATIONAL, INC. a Delaware corporation; RESIDENCE INN BY MARRIOTT, LLC, a Delaware limited liability company;  and DOES 1 through 100, inclusive,<br><br>        Defendants. | Case No. 2:24-cv-05065<br><br>Santa Barbara County Superior Court Case No. 24CV02395<br><br>**NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. SECTION 1332(d), 1441, AND 1446 (CLASS ACTION FAIRNESS ACT)** |

SMRH:4869-0197-4467.5

# TABLE OF CONTENTS

Page

I.   STATEMENT OF JURISDICTION UNDER THE CLASS ACTION
     FAIRNESS ACT ........................................................................................ 1

II.  STATUS OF PLEADINGS ........................................................................ 2

III. JURISDICTION PURSUANT TO CAFA IS SATISFIED ............................ 3

     A.   Minimum Diversity Of Citizenship Exists Here .............................. 4

     B.   The Amount In Controversy Exceeds The $5,000,000
          Requirement Under CAFA ....................................................... 7

          a.   Amount In Controversy For Plaintiff's Waiting Time
               Penalties .................................................................... 11

          b.   Amount In Controversy For Plaintiff's Meal Period and
               Rest Break Claims ...................................................... 13

          d.   Amount In Controversy For Attorneys' Fees ........................... 14

     C.   No CAFA Exceptions Apply ................................................. 16

IV.  TIMELINESS OF REMOVAL ........................................................ 17

V.   NOTICE TO PLAINTIFF AND STATE COURT ...................................... 17

<table>
<tr><td>1</td></tr>
</table>

## <u>TABLE OF AUTHORITIES</u>

Page(s)

<u>Cases</u>

<u>Anderson v. Watt</u>
  138 U.S. 694 (1891) ................................................................................4

<u>Barborsa v. Transp. Drivers, Inc.</u>
  2015 WL 9272828 (C.D. Cal. Dec. 18, 2015)........................................4

<u>Bradley Min. Co. v. Boice</u>
  194 F.2d 80 (9th Cir. 1951) ...................................................................4

<u>Bridewell-Sledge v. Blue Cross</u>
  798 F.3d 923 (9th Cir. 2015) .................................................................4

<u>Chavez v. JPMorgan Chase</u>
  888 F.3d 413 (9th Cir. 2018) .................................................................9

<u>Chavez v. Netflix, Inc.</u>
  162 Cal. App. 4th 43 (2008) ................................................................15

<u>Coleman v. Estes Express Lines, Inc.</u>
  730 F. Supp. 2d 1141 (C.D. Cal. 2010) (<u>aff'd by</u> 631 F.3d 1010 (9th Cir. 2011))................................................................................................8, 12

<u>Dart Cherokee Basin Operating Co., LLC v. Owens</u>
  135 S. Ct. 547 (2014)...................................................................3, 4, 8

<u>Ehrman v. Cox Commc'ns, Inc.</u>
  932 F.3d 1223 (9th Cir. 2019) ...............................................................8

<u>Fristos v. Reynolds Metals Co.</u>
  615 F.2d 1209 (9th Cir. 1980) ...............................................................7

<u>Fritsch v. Swift Transp. Co. of Ariz., LLC</u>
  899 F.3d 785 (9th Cir. 2018) ...........................................................9, 15

<u>Galt G/S v. JSS Scandinavia</u>
  142 F.3d 1150 (9th Cir. 1998) .............................................................14

<u>Garibay v. Archstone Communities LLC</u>
  539 F. App'x 763 (9th Cir. 2013)........................................................15

-i-

Hanlon v. Chrysler Corp.
    150 F.3d 1011 (9th Cir. 1998) ............................................................. 15

Henry v. Cent. Freight Lines, Inc.
    692 F. App'x 806 (9th Cir. 2017) ........................................................... 8

Hertz Corp. v. Friend
    130 S. Ct. 1181 (2010) ..................................................................... 5, 6

Ibarra v. Manheim Invs., Inc.
    775 F.3d 1193 (9th Cir. 2015) ............................................................... 4

Jasso v. Money Mart Exp., Inc.
    2012 WL 699465 (N.D. Cal. Mar. 1, 2012) .......................................... 15

Johnson v. Columbia Props. Anchorage, LP
    437 F.3d 894 (9th Cir. 2006) ................................................................. 6

Jordan v. Nationstar Mortg. LLC
    781 F.3d 1178 (9th Cir. 2015) ............................................................... 4

King v. Great Am. Chicken Corp.
    903 F.3d 875 (9th Cir. 2018) ............................................................... 16

Kroske v. US Bank Corp.
    432 F.3d 976 (9th Cir. 2005) ................................................................. 9

Lew v. Moss
    797 F.2d 747 (9th Cir. 1986) ................................................................. 5

Lewis v. Verizon Commc'ns., Inc.
    627 F.3d 395 (9th Cir. 2010) ................................................................. 8

Marshall v. G2 Secure Staff, LLC
    2014 WL 3506608 (C.D. Cal. July 14, 2014) ...................................... 15

McCraw v. Lyons
    863 F. Supp. 430 (W.D. Ky. 1994) ....................................................... 8

Mondragon v. Capital One Auto Fin.
    736 F.3d 880 (9th Cir. 2013) ................................................................. 5

Moppin v. Los Robles Reg'l Med. Ctr.
    2015 WL 5618872 (C.D. Cal. Sept. 24, 2015) ...................................... 4

-ii-

Mortley v. Express Pipe & Supply Co.
   2018 WL 708115 (C.D. Cal. Feb. 5, 2018) ........................................................ 12

Muniz v. Pilot Travel Centers LLC
   2007 WL 1302504 (E.D. Cal. Apr. 30, 2007) ...................................................... 9

Murphy Bros. v. Michetti Pipe Stringing, Inc.
   526 U.S. 344 (1999) ........................................................................................... 17

Pineda v. Bank of Am. N.A.
   50 Cal. 4th 1389 (2010) ..................................................................................... 11

Ramirez v. Benihana Nat'l Corp.
   2019 WL 131843 (N.D. Cal. Jan. 8, 2019) ........................................................ 15

Ramos v. Schenker, Inc.
   2018 WL 5779978 (C.D. Cal. Nov. 1, 2018) ..................................................... 15

Rodriguez v. Cleansource, Inc.
   2014 WL 3818304 (S.D. Cal. Aug. 4, 2014) ..................................................... 15

Sanchez v. Russell Sigler, Inc.
   2015 WL 12765359 (C.D. Cal. Apr. 28, 2015) ................................................. 12

Smith v. CRST Van Expedited, Inc.
   2013 WL 163293 (S.D. Cal. Jan. 14, 2013) ...................................................... 15

State Farm Mut. Auto Ins. Co. v. Dyer
   19 F.3d 514 (10th Cir. 1994) ............................................................................... 5

Statutes

28 U.S.C. § 84(c) ..................................................................................................... 2

28 U.S.C. § 1332 ...........................................................1, 2, 3, 4, 5, 6, 7, 8, 9, 16, 17

28 U.S.C. § 1391 ..................................................................................................... 2

28 U.S.C. § 1441(a) ............................................................................................. 1, 7

28 U.S.C. § 1446 ............................................................................................ 1, 3, 17

California Business and Professions Code § 17200, et seq ...................................... 3

California Code of Civil Procedure § 382 .............................................................. 2

-iii-

California. Labor Code § 201 ....................................................................... 11

California. Labor Code § 202 ....................................................................... 11

California Labor Code § 203 ......................................................................... 11

Labor Code § 226 ................................................................................... 13, 14

SMRH:4869-0197-4467.5

TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA:

PLEASE TAKE NOTICE that Defendants Marriott International, Inc. ("MII") and Residence Inn by Marriott, LLC ("RIBM") (collectively, "Defendants") hereby remove the matter filed by Plaintiff Joshua Cahill ("Plaintiff") in the case entitled <u>Joshua Cahill v. Marriott International, Inc</u>., pending in the Superior Court of the State of California in and for the County of Santa Barbara, Case No. 24CV02395, to the United States District Court for the Central District of California, pursuant to 28 U.S.C. Sections 1332(d), 1441(b), and 1446.

Removal is based on the Class Action Fairness Act ("CAFA"), 28 U.S.C. Sections 1332(d), 1441(b) and 1446, on the following grounds:

I.    <u>STATEMENT OF JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT</u>

1.    CAFA was enacted on February 18, 2005.  In relevant part, CAFA grants federal district courts original jurisdiction over civil class action lawsuits filed under federal or state law in which any member of a class of plaintiffs is a citizen of a state different from any defendant, and where the matter in controversy exceeds $5,000,000, exclusive of interest and costs.

2.    This Court has jurisdiction over this case under CAFA, 28 U.S.C. Section 1332(d), and this case may be removed pursuant to the provisions of 28 U.S.C. Section 1441(a), in that it is a civil class action wherein: (1) the proposed class contains at least 100 members; (2) the primary defendant is not a state, state official or other governmental entity; (3) the total amount in controversy for all class members exceeds $5,000,000; and (4) there is diversity between at least one class member and one defendant.  Each of these conditions was satisfied at the time this action was initiated and now at the time of removal.

3.      Further, while there are a number of exceptions to this rule of original jurisdiction contained in 28 U.S.C. section 1332(d)(3)-(5), none of the exceptions is applicable here, as demonstrated hereafter.

4.      Venue is proper in this Court pursuant to 28 U.S.C. Sections 84(c) and 1391.

5.      As set forth below, this case meets all of CAFA's requirements for removal and is timely and properly removed by the filing of this Notice.

II.      STATUS OF PLEADINGS

6.      On or about April 29, 2024, Plaintiff filed a complaint in the Superior Court of the State of California in and for the County of Santa Barbara, entitled Joshua Cahill v. Marriott International, Inc., Santa Barbara County Superior Court Case No. 24CV02395 ("Complaint").

7.      A copy of the Complaint and related documents were served on Defendants on May 16, 2024.  True and correct copies of the Summons, Complaint, Order and Notice of Case Assignment and Notice of Case Management Conference, Civil Case Cover Sheet and Addendum, served on Defendants are attached hereto, collectively, as Exhibits A to D.

8.      Prior to filing this Notice of Removal, Defendants filed its Answer to the Complaint in Santa Barbara County Superior Court and served their Answer on Plaintiff.  Attached hereto as Exhibit E is a true and correct copy of Defendants' Answer to the Complaint.

9.      Plaintiff asserts in his Complaint that Defendants employed him and other persons in the capacity of non-exempt positions throughout the state of California.  See Complaint, ¶14.

10.     This action has been filed as a California class action under California Code of Civil Procedure Section 382.  See Complaint, ¶ 13.  California Code of Civil Procedure Section 382 is a state statute authorizing an action to be brought by one or more representative persons as a class action.

11.    On the basis of its own investigation, Defendants determined there are more than 100 current and former non-exempt employees who worked for them in California during the four-year period prior to the filing of the Complaint. Therefore, Plaintiff's proposed class consists of at least 100 members now at the time of removal and at the initiation of this civil action.  <u>See</u> Booker Decl., ¶ 3.

12.    Plaintiff's Complaint asserts ten (10) causes of action: (1) failure to pay overtime wages; (2) unpaid meal period premiums; (3) unpaid rest break premiums; (4) unpaid minimum wages; (5) failure to pay final wages timely; (6) failure to pay wages timely during employment; (7) failure to provide accurate and itemized wage statements; (8) failure to keep requisite payroll records, (9) failure to reimburse necessary business expenses, and (10) unfair business practices, in violation of California Business and Professions Code Section 17200, <u>et seq</u>.

III.    <u>JURISDICTION PURSUANT TO CAFA IS SATISFIED</u>

13.    Pursuant to Section 4 of CAFA, 28 U.S.C. Section 1332(d)(2):

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which –
> (A) any member of a class of plaintiffs is a citizen of a State different from any defendant.

Under CAFA, a removing defendant need not submit any evidence of the facts establishing jurisdiction in its notice of removal.  <u>Dart Cherokee Basin Operating Co., LLC v. Owens</u>, 135 S. Ct. 547, 551 (2014) (A notice of removal "need not contain evidentiary submissions."). Defendants are only required to submit a "short and plain statement of the grounds for removal."  28 U.S.C. § 1446(a).  A plausible allegation of the relevant jurisdictional facts is sufficient in a notice of removal.  Dart Cherokee, at 554.  Evidence is required only if the plaintiff contests, or the Court questions, Defendant's allegations.  <u>Id.</u>

14.    The United States Supreme Court in <u>Dart Cherokee</u> held that "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to

facilitate adjudication of certain class actions in federal court," adding that "CAFA should be read 'with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.'" Id.  Following Dart Cherokee, the Ninth Circuit has directed the district courts to "interpret CAFA's provisions under section 1332 broadly in favor of removal . . . ." Jordan v. Nationstar Mortg. LLC, 781 F.3d 1178, 1184 (9th Cir. 2015) (emphasis added); see also Ibarra v. Manheim Invs., Inc., 775 F.3d 1193, 1197 (9th Cir. 2015) ("Congress intended CAFA to be interpreted expansively").  In Bridewell-Sledge v. Blue Cross, 798 F.3d 923 (9th Cir. 2015), the Ninth Circuit held that under Dart Cherokee, the district court erred "in its remand orders by applying a 'strong presumption against removal jurisdiction.'" Moppin v. Los Robles Reg'l Med. Ctr., 2015 WL 5618872, at *2 (C.D. Cal. Sept. 24, 2015) ("[N]o presumption against removal exists in cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court").

A.    Minimum Diversity Of Citizenship Exists Here

15.    CAFA's minimal diversity requirement is satisfied when: (1) at least one plaintiff is a citizen of a state in which none of the defendants are citizens; (2) at least one plaintiff is a citizen of a foreign state and one defendant is a U.S. citizen; or (3) at least one plaintiff is a U.S. citizen and one defendant is a citizen of a foreign state.  See 28 U.S.C. Section 1332(d).

16.    Plaintiff is a resident and citizen of California.  See Complaint ¶ 5.  At all times set forth in the Complaint, Plaintiff worked for Defendants in California. See Complaint, ¶ 18.  Although no evidence of domicile is required at the notice of removal stage (Dart Cherokee, 135 S. Ct. at 554), "[p]roof of residence in a state is usually through prima facie evidence of domicile."  Bradley Min. Co. v. Boice, 194 F.2d 80, 84 (9th Cir. 1951); Anderson v. Watt, 138 U.S. 694, 706 (1891) ("The place where a person lives is taken to be his domicile until facts adduced establish the contrary . . . ."); Barborsa v. Transp. Drivers, Inc., 2015 WL 9272828, at *2

-4-

(C.D. Cal. Dec. 18, 2015) ("[A] person's residence is prima facie evidence of [their] place of domicile for purposes of diversity jurisdiction[.]") (quotations omitted). Furthermore, "a party with the burden of proving citizenship may rely on the presumption of continuing domicile, which provides that, once established, a person's state of domicile continues unless rebutted with sufficient evidence of change." Mondragon v. Capital One Auto Fin., 736 F.3d 880, 885 (9th Cir. 2013).

17.    Where there are no allegations of citizenship of certain parties in the complaint, a removing party may introduce "objective facts" in support of removal that would tend to show the domicile or citizenship of a party in a particular state. Lew v. Moss, 797 F.2d 747, 749 (9th Cir. 1986) ("[T]he determination of an individual's domicile involves a number of factors (no single factor controlling), including: current residence, voting registration and voting practices, location of personal and real property, location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, place of employment or business, driver's license and automobile registration, and payment of taxes[.]").

18.    Here, Plaintiff worked and lives in California.  See Complaint, ¶¶5, 18, 19.  Accordingly, Plaintiff is a citizen of California for purposes of determining diversity.  See 28 U.S.C. Section 1332(a)(1) (an individual is a citizen of the state in which they are domiciled); State Farm Mut. Auto Ins. Co. v. Dyer, 19 F.3d 514, 520 (10th Cir. 1994) (residence is prima facie evidence of domicile for purposes of determining citizenship).

19.    For diversity purposes, a corporation is deemed to be a citizen of the state in which it has been incorporated and the state where it has its principal place of business.  28 U.S.C. Section 1332(c)(1).

20.    The U.S. Supreme Court has clarified the definition of a corporation's "principal place of business."  In Hertz Corp. v. Friend, 130 S. Ct. 1181, 1192 (2010), the United States Supreme Court concluded that "'principal place of

-5-

1  business' is best read as referring to the place where a corporation's officers direct,

2  control, and coordinate the corporation's activities."  The Supreme Court further

3  clarified that, "in practice" the principal place of business "should normally be the

4  place where the corporation maintains its headquarters - provided that the

5  headquarters is the actual center of direction, control, and coordination."  Id.

6      21.    Under the foregoing standard, the facts here clearly establish that MII is

7  now at the time of this removal, and was at the institution of this civil action, a

8  citizen of Delaware and Maryland for purposes of removal.  MII was incorporated in

9  the State of Delaware, and maintains its respective corporate headquarters in

10  Bethesda, Maryland.  Declaration of Andrew Wright ("Wright Decl."), ¶¶ 2-3.  It is

11  Bethesda, Maryland where MII's respective high-level officers direct, control, and

12  coordinate Marriott International, Inc.'s activities.  Id., ¶3.  MII's executive

13  operations are managed from their corporate headquarters.  Id.  Accordingly, MII's

14  principal place of business is in Maryland.  Id.; 28 U.S.C. Section 1332(c)(1).

15      22.    Furthermore, for diversity purposes, a limited liability company is a

16  citizen of "every state of which its owners/members are citizens."  Johnson v.

17  Columbia Props. Anchorage, LP, 437 F.3d 894, 899 (9th Cir. 2006).  Its members

18  are viewed under the same analyses as for any other entity, such that a corporation is

19  deemed to be a citizen of the state in which it has been incorporated and the state

20  where it has its principal place of business.  28 U.S.C. § 1332(c)(1).

21      23.    Under the foregoing standards, RIBM is now at the time of this

22  removal a citizen of Delaware and Maryland.

23      24.    RIBM is a limited liability company formed under the laws of

24  Delaware, with its principal place of business in Bethesda, Maryland.  RIBM

25  maintains its headquarters in Bethesda, Maryland.  It is in Bethesda, Maryland

26  where RIBM's high-level officers direct, control, and coordinate RIBM's activities.

27  RIBM's executive operations are managed from its headquarters, including but not

28  limited to, those operations relating to administering company-wide policies and

procedures, legal affairs, and general business operations.  RIBM's sole member is Marriott Hotel Services, LLC ("MHS").  MHS is a limited liability company organized under the laws of Delaware, with its principal place of business in Maryland.  MHS maintains its headquarters in Bethesda, Maryland.  It is in Bethesda, Maryland where MHS's high-level officers direct, control, and coordinate MHS's activities.  MHS's executive operations are managed from its headquarters, including but not limited to, those operations relating to administering company-wide policies and procedures, legal affairs, and general business operations.  MHS' sole member is MII.  MII is a corporation incorporated in Delaware with its principal place of business in Maryland. <u>See</u> Wright  Decl., ¶¶ 4-7.

25.    Pursuant to 28 U.S.C. Section 1441(a), the residence of fictitious and unknown defendants should be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. Section 1332.  <u>Fristos v. Reynolds Metals Co.</u>, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition).  Thus, the existence of Doe Defendants 1 through 100, inclusive, does not deprive this Court of jurisdiction.

26.    Accordingly, Defendants are citizens of Delaware and Maryland, and Plaintiff is a citizen of California.  Thus, the complete diversity requirement of 28 U.S.C. Section 1332(a) is satisfied.

B.    <u>The Amount In Controversy Exceeds The $5,000,000 Requirement Under CAFA</u>

27.    Without making an admission of liability or damages with respect to any aspects of this case or the proper legal test(s) applicable to Plaintiff's allegations on behalf of herself and the putative class, the amount in controversy exceeds the jurisdictional minimum of this Court as detailed below. [1]

---

[1] Plaintiff alleges that he and the putative class were employed by MII. However, Defendants reserve the right to dispute that MII was the employer of Plaintiff and/or the putative class.

28.   "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdiction threshold." Dart Cherokee, 135 S. Ct. at 554.  Moreover, a defendant need not set forth evidence establishing the amount in its notice of removal.  Id.  A defendant is not obliged to "research, state, and prove the plaintiff's claims for damages." McCraw v. Lyons, 863 F. Supp. 430, 434 (W.D. Ky. 1994).  A defendant can establish the amount in controversy by "provid[ing] only a short and plain statement of the grounds for removal." Ehrman v. Cox Commc'ns, Inc., 932 F.3d 1223, 1225 (9th Cir. 2019); Dart Cherokee, 135 S. Ct. at 547 (holding that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" and evidentiary submissions are required only if "the plaintiff contests, or the court questions, the defendant's allegations").  Here, if Plaintiff's allegations in the Complaint as accepted as true, there is more than $5,000,000 in controversy.

29.   CAFA authorizes the removal of class actions in which, among the other factors mentioned above, the aggregate amount in controversy for all class members exceeds $5,000,000.00.  See 28 U.S.C. Section 1332(d).  By demonstrating that the actual amount in controversy exceeds the threshold, Defendants do not concede the validity of Plaintiff's claims or the likelihood that Plaintiff will certify any class or recover anything.

30.   "In determining the amount in controversy, the Court accepts the allegations contained in the complaint as true and assumes the jury will return a verdict in the plaintiff's favor on every claim." Henry v. Cent. Freight Lines, Inc., 692 F. App'x 806, 807 (9th Cir. 2017).  "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." Lewis v. Verizon Commc'ns., Inc., 627 F.3d 395, 400 (9th Cir. 2010); Coleman v. Estes Express Lines, Inc., 730 F. Supp. 2d 1141, 1148 (C.D. Cal. 2010) ("In deciding the amount in controversy, the Court looks to what the plaintiff has

-8-

1  alleged, not what the defendants will owe . . . .") (aff'd by 631 F.3d 1010 (9th Cir.

2  2011)); Muniz v. Pilot Travel Centers LLC, 2007 WL 1302504, at *3 (E.D. Cal.

3  Apr. 30, 2007) ("The ultimate inquiry is what amount is put 'in controversy' by the

4  plaintiff's complaint, not what a defendant will actually owe.").

5       31.  In the Ninth Circuit, the amount in controversy is determined "at the

6  time of removal."  Kroske v. US Bank Corp., 432 F.3d 976, 980 (9th Cir. 2005)

7  (quoting Singer v. State Farm Mut. Auto. Ins. Co., 116 F.3d 373, 376 (9th Cir.

8  1997).  In Chavez v. JPMorgan Chase, 888 F.3d 413, 417 (9th Cir. 2018), the Ninth

9  Circuit held "[t]hat the amount in controversy is assessed at the time of removal

10 does not mean that the mere futurity of certain classes of damages precludes them

11 from being part of the amount in controversy."  Id. at 417.  Chavez held that "the

12 amount in controversy is not limited to damages incurred prior to removal—for

13 example, it is not limited to wages plaintiff-employee would have earned before

14 removal (as opposed to after removal).  Rather, the amount in controversy is

15 determined by the complaint operative at the time of removal and encompasses all

16 relief a court may grant on that complaint if the plaintiff is victorious."  Id. at 414-

17 15.  The Ninth Circuit again affirmed these principles in Fritsch v. Swift Transp. Co.

18 of Ariz., LLC, 899 F.3d 785 (9th Cir. 2018).

19      32.  Defendants provide the following calculations only to demonstrate that

20 the amount in controversy in this case easily exceeds the jurisdictional amount in

21 controversy under CAFA jurisdiction.  Defendants make no admission of any

22 liability or damages with respect to any aspect of this case, or to the proper legal test

23 to be applied to Plaintiff's claims.  Nor do Defendants waive their right to ultimately

24 contest the proper amount of damages due, if any, should Plaintiff prevail with

25 respect to any of his claims.

26      33.  Plaintiff's Complaint defines the putative class ("Proposed Putative

27 Class") as: "all current and former hourly paid or non-exempt employees who

28 worked for any of the Defendants within the State of California at any time during

-9-

the period from four years preceding the filing of this Complaint to final judgment and who reside in California." Plaintiff's Complaint defines a potential subclass ("Proposed Subclass A") as: "all class members who received overtime compensation at a rate lower than their respective regular rate of pay because Defendants failed to include all shift differential pay/commissions/non-discretionary bonuses/non-discretionary performance pay in the calculation of the regular rate of pay for overtime purposes." Plaintiff's Complaint defines an additional potential subclass ("Proposed Subclass B") as: "all class members who were subject to Defendants' practice of rounding time recorded for purposes of calculating compensation for time worked or for calculating meal periods." See Complaint, ¶ 14.

34.    Defendants independently determined based on its own business records that during the preceding four years prior to the filing of this action, i.e., April 29, 2020 to present, RIBM paid Proposed Putative Class members at least minimum wage, which as of January 1, 2020 was at least $13.00 per hour in California. As of January 1, 2021, the applicable minimum wage was at least $14.00 per hour in California. See Booker Decl., ¶ 4. Many of RIBM's non-exempt hourly employees from April 29, 2020 to present were paid an hourly base wage much higher than California minimum wage. See Booker Decl., ¶ 4.

35.    Defendants independently determined based on RIBM's own business records that between April 29, 2021 and May 23, 2024, at least 1,240 members of the Proposed Putative Class separated from employment with RIBM. During this period, such individuals worked an average shift length of 7.81 hours. See Angel Decl. ¶ 5.

36.    Defendants independently determined based on RIBM's own business records that between April 29, 2020 and June 3, 2024, there were approximately 725,979 shifts worked by California non-exempt workers that were over five hours (and thus qualified for a meal period). See Angel Decl. ¶ 6.

-10-

37.     Defendants independently determined based on RIBM's own business records that between April 29, 2020 and June 3, 2024, RIBM's non-exempt employees in California worked approximately 744,260 shifts worked by California non-exempt workers that were over 3.5 hours and thus qualified for a rest break. See Angel Decl. ¶ 7.

38.     Defendants independently determined based on RIBM's own business records that between April 29, 2023 and May 24, 2024, approximately 1,382 California non-exempt workers received a wage statement from RIBM, totaling 50,189 issued wage statements during that time.   See Angel Decl. ¶ 8.

> a.     Amount In Controversy For Plaintiff's Waiting Time Penalties

39.     Under California Labor Code Section 203, "If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201 [or] 202 . . . any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days."

40.     Plaintiff alleges that Defendants willfully failed to pay wages to former Putative Class Members in accordance with California. Labor Code Sections 201 and 202.  Pursuant to California Labor Code Section 203, Plaintiff seeks waiting time penalties at the employees' regular rate of pay, for a penalty of up to 30 days' wages.  See Complaint, ¶¶ 87-92.

41.     The statute of limitations for a claim under California Labor Code Section 203 is three years.  Pineda v. Bank of Am. N.A., 50 Cal. 4th 1389, 1398 (2010). There were at least 1,240 Proposed Putative Class members whose employment with RIBM terminated between April 29, 2021 and May 23, 2024, and such employes worked an average shift length of 7.81 hours.  See Angel Decl., ¶ 5.

-11-

42.     Therefore, Defendants independently determined based on RIBM's business records and on the allegations contained within Plaintiff's Complaint that Plaintiff alleged an amount in controversy for waiting time penalties damages (exclusive of interest) in the amount of at least $4,067,448.00 accrued as of present) ($14.00 lowest possible rate of pay)[2] x 7.81 hours per day x 30 days x 1,240 former alleged Proposed Putative Class members).  See Angel Decl. ¶ 5.

43.     Defendants are be justified in using a 100% violation rate in computing the amount in controversy for purposes of Plaintiff's final pay claim based on the nature of Plaintiff's allegations that "During the relevant time period, Defendants intentionally and willfully failed to pay Plaintiff and the other class members who are no longer employed by Defendants their wages, earned and unpaid, within seventy-two (72) hours of their leaving Defendants' employ." Complaint, ¶ 89; Coleman, 730 F. Supp. 2d at 1149 ("[C]ourts have assumed a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation."); Sanchez v. Russell Sigler, Inc., 2015 WL 12765359, *6 (C.D. Cal. Apr. 28, 2015) ("Defendant's use of a 100% violation rate is proper in this case because Plaintiff's complaint alleges universal deprivation of meal and rest periods."); Mortley v. Express Pipe & Supply Co., 2018 WL 708115, at *4 (C.D. Cal. Feb. 5, 2018) (100% violation rate proper when allegations are "routine and systematic violations").  It is evident from the Complaint that wages allegedly remained unpaid after 30 days following each putative class member's termination from employment. If the claimed unpaid wages had been paid at some time during the 30-day window, Plaintiff would not still be seeking damages for any unpaid wages in the Complaint.

---

[2] The waiting time penalties analysis was completed using a $14 per hour rate of pay.  However, Defendants expect these numbers are actually higher as RIBM employees always earned at least minimum wage, which was higher than $14 per hour since 2022.

b.   <u>Amount In Controversy For Plaintiff's Meal Period and Rest Break Claims</u>

44.   Plaintiff also alleges that he and the Proposed Putative Class members were not provided meal and rest periods in accordance with California law.  <u>See</u> Complaint, ¶¶ 61-80.

45.   Labor Code Section 226.7 states that if an employer does not provide an employee with a compliant meal or rest break, the employer must pay the employee a premium payment of one hour of pay at the employee's regular rate of compensation.

46.   Defendants independently determined based on RIBM's own business records that between April 29, 2020 and June 3, 2024, there were approximately 725,979 shifts worked by California non-exempt workers that were over five hours (and thus qualified for a meal period).  <u>See</u> Angel Decl. ¶ 6.

47.   Assuming a 5% meal period violation rate and using $13 per hour as the hourly regular rate of pay, then alleged unpaid meal period premiums is $<u>471,887.00;</u>  assuming a 20% meal period violation rate and using $13 per hour as the hourly regular rate of pay, then alleged unpaid meal period premiums is approximately $<u>1,887,548.00;</u>  assuming a 50% meal period violation rate and using $13 per hour as the hourly regular rate of pay, then alleged unpaid meal period premiums is approximately <u>4,718,870.00</u>[3].  <u>See</u> Angel Decl. ¶ 6.

48.   Defendants independently determined based on RIBM's own business records that between April 29, 2020 and June 3, 2024, there were approximately 744,260 shifts worked by California non-exempt workers that were over 3.5 hours and thus qualified for a rest break.  <u>See</u> Angel Decl. ¶ 7.

---

[3] The meal period analysis was completed using a $13 per hour rate of pay.  However, Defendants expect these numbers are actually higher as RIBM employees always earned at least minimum wage, which was higher than $14 per hour since 2022.

-13-

49.     Assuming a 5% rest break violation rate and using $13 per hour as the hourly regular rate of pay, then alleged unpaid rest break premiums is approximately $483,769.00;  assuming a 20% rest break violation rate and using $13 per hour as the hourly regular rate of pay, then alleged unpaid rest break premiums is approximately $1,935,076.00  assuming a 50% rest break violation rate and using $13 per hour as the hourly regular rate of pay, then alleged unpaid rest break premiums is approximately $4,837,690.00.[4]  See Angel Decl. ¶ 7.

c.     Inaccurate Wage Statement Claim

50.     Plaintiff also seeks penalties under Labor Code Section 226(e), alleging class members during the relevant time period did not receive accurate and itemized wage statements.  See Complaint, ¶ 98.

51.     Labor Code Section 226(e) provides for penalties in the amount $50 for each initial alleged wage statement violation to an employee, and $100 for each subsequent violation, up to $4,000.

52.     Defendants independently determined based on RIBM's own business records that between April 29, 2023 and May 24, 2024, approximately 1,382 California non-exempt workers received a wage statement from RIBM, totaling 50,189 issued wage statements during that time.   Using the Labor Code Section 226(e) penalty scheme and evaluating the number of wage statements received by the 1,382 California non-exempt employees, and assuming a 100% violation rate, the penalties total approximately $3,916,900.00.  Assuming a 50% violation rate, the penalties total approximately $2,404,100,00.  See Angel Decl. ¶ 8.

d.     Amount In Controversy For Attorneys' Fees

53.      Under Ninth Circuit precedent, a plaintiff's claim for attorneys' fees must be included in the amount in controversy.  Galt G/S v. JSS Scandinavia, 142

---

[4] The rest break analysis was completed using a $13 per hour rate of pay.  However,  Defendants expect these numbers are actually higher as RIBM employees always earned at least minimum wage, which was higher than $14 per hour since 2022.

-14-

F.3d 1150, 1156 (9th Cir. 1998) ("[W]here an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy."). In Fritsch v. Swift Transp. Co. of Ariz., LLC, 899 F.3d 785 (9th Cir. 2018), the Ninth Circuit held that future attorneys' fees that are claimed, but not accrued at the time of removal, must be considered in the amount in controversy.

54.     Courts may use a 25% benchmark of total recovery when estimating the attorneys' fees in controversy. Garibay v. Archstone Communities LLC, 539 F. App'x 763, 764 (9th Cir. 2013); Rodriguez v. Cleansource, Inc., 2014 WL 3818304, at *4 (S.D. Cal. Aug. 4, 2014); Marshall v. G2 Secure Staff, LLC, 2014 WL 3506608 (C.D. Cal. July 14, 2014); Jasso v. Money Mart Exp., Inc., 2012 WL 699465 (N.D. Cal. Mar. 1, 2012); Ramos v. Schenker, Inc., 2018 WL 5779978, at *3 (C.D. Cal. Nov. 1, 2018); Ramirez v. Benihana Nat'l Corp., 2019 WL 131843, at *2 (N.D. Cal. Jan. 8, 2019); Hanlon v. Chrysler Corp., 150 F.3d 1011, 1029 (9th Cir. 1998) ("This circuit has established 25% of the common fund as a benchmark award for attorney fees"). Thus, an additional minimum amount of $1,856,801.00 to $4,385,227.00 must be included in the amount in controversy.

55.     Further, the same amount for alleged attorneys' fees is in controversy using the "lodestar" method of fee computation. Chavez v. Netflix, Inc., 162 Cal. App. 4th 43, 66 n.11 (2008) ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery[.]"); Smith v. CRST Van Expedited, Inc., 2013 WL 163293, at *5 (S.D. Cal. Jan. 14, 2013) ("California has recognized that most fee awards based on either a lodestar or percentage calculation are 33 percent and has endorsed the federal benchmark of 25 percent[.]").

56.     For all of the forgoing reasons, Defendants allege that the amount placed in controversy by Plaintiff's Complaint is reasonably believed to be between $9,375,895.00 and $22,845,035.00, which is significantly greater than the

jurisdictional minimum of $5,000,000 required by CAFA, both at the time removal and at the institution of this civil action.  The amount in controversy requirement for CAFA is therefore satisfied.

| Claim | Low | High |
|---|---|---|
| Waiting Time Penalties | 4,067,448.00 | 4,067,448.00 |
| Meal Period | 471,887.00 | 4,718,870.00 |
| Rest Break | 483,769.00 | 4,837,690.00 |
| Inaccurate Wage Statement | $2,404,100.00 | $3,916,900.00 |
| Attorney's Fees | $1,856,801 | $4,385,227.00 |
| **Total:** | **$9,284,005.00** | **$21,926,135.00** |

C.      No CAFA Exceptions Apply

57.    CAFA contains a number of exceptions to its grant of original jurisdiction, contained in 28 U.S.C. Sections 1332(d)(3)-(5).  However, none of these exceptions is applicable here.  The party resisting removal has the burden of proving the existence of a CAFA exception. King v. Great Am. Chicken Corp., 903 F.3d 875, 878 (9th Cir. 2018).

58.    The first is a discretionary exception based on the number of putative class members found in the state where the action was filed. See 28 U.S.C. Section 1332(d)(3).  However, the exception only applies where the "primary defendants are citizens of the State in which the action was originally filed."  Here, the action was originally filed in California and, as noted above, Defendant is not a citizen of California.  Thus, this exception does not apply.

59.    Similarly, 28 U.S.C. Section 1332(d)(4) contains an exception to CAFA's grant of jurisdiction, based on the number of putative class members in the

-16-

NOTICE OF REMOVAL

state in which the action was filed.  However, this exception, too, only applies where all primary defendants, or at least one defendant whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class, is a "citizen of the State in which the action was originally filed."  See 28 U.S.C. Section 1332(d)(4)(A)(i)(II),1332(d)(4)(B).  Given that this action was originally filed in California, and neither MII nor RIBMis a California citizen, these exceptions also do not apply.

60.     Finally, 28 U.S.C. Section 1332(d)(5) presents two additional exceptions for defendants who are government entities, or putative classes which number less than 100 in the aggregate.  See 28 U.S.C. Section 1332(d)(5)(A)-(B). Given that Defendants are not governmental entities, and that the proposed class numbers are alleged to be greater than 100 individuals, these exceptions also do not apply.

## IV.     TIMELINESS OF REMOVAL

61.     As required by 28 U.S.C. Section 1446(b), this Notice of Removal is timely filed within thirty (30) days after service of the Complaint on May 16, 2024. Murphy Bros. v. Michetti Pipe Stringing, Inc., 526 U.S. 344 (1999) (thirty-day window to remove does not run until formal service is complete under state law).

## V.     NOTICE TO PLAINTIFF AND STATE COURT

62.     Contemporaneous with the filing of this Notice of Removal in the United States District Court for the Central District of California, written notice of such filing will be served on Plaintiff's counsel of record, at Lawyers for Justice, PC, 410 West Arden Avenue, Suite 203, Glendale, California 91203.  In addition, a copy of this Notice of Removal will be filed with the Clerk of the Court for the Superior Court of the County of Los Angeles, California.

63.     In compliance with 28 U.S.C. Section 1446(a), true and correct copies of all "process, pleadings, and orders" from the state court action served on Defendants or filed by Defendants are attached hereto as Exhibits A through E.

-17-

WHEREFORE, having provided notice as is required by law, the above-entitled action should be removed from the Superior Court for the County of Los Angeles to this Court.

Dated:  June 14, 2024

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By        /s/ Greg S. Labate

GREG S. LABATE
ERIC T. ANGEL
Attorneys For Defendant
MARRIOTT INTERNATIONAL, INC. and
RESIDENCE INN BY MARRIOTT, LLC

-18-