1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                        CENTRAL DISTRICT OF CALIFORNIA

10

11   JOSHUA CAHILL,                        Case No. 2:24-cv-05065-FLA (JCx)

12                          Plaintiff,     **ORDER DENYING PLAINTIFF'S**

13         v.                              **MOTION TO REMAND [DKT. 21]**

14

15   MARRIOTT INTERNATIONAL, INC.,
     *et al.*,
16
                            Defendants.
17

18

19

20

21

22

23

24

25

26

27

28

**RULING**

Before the court is Plaintiff Joshua Cahill's ("Cahill" or "Plaintiff") Motion to Remand ("Motion") (Dkt. 21, "Mot.").[1] Defendants Marriott International, Inc. ("MII") and Residence Inn by Marriott, LLC ("RIBM") (collectively "Defendants") oppose the motion. Dkt. 22 ("Opp'n").

On August 14, 2024, the court found this matter appropriate for resolution without oral argument and vacated the hearing set for August 16, 2024. Dkt. 28; *see* Fed. R. Civ. P. 78(b); Local Rule 7-15. For the reasons stated below, the court DENIES Plaintiff's Motion in its entirety.

**BACKGROUND**

Plaintiff filed this action against Defendants in Santa Barbara Superior Court, Case No. 24CV02395, on April 29, 2024. Dkt. 1-2 ("Compl."). In the class action Complaint, Plaintiff brings the following causes of action: (1) Violation of California Labor Code §§ 510 and 1198 (Unpaid Overtime); (2) Violation of California Labor Code §§ 226.7 and 512(a) (Unpaid Meal Period Premiums); (3) Violation of California Labor Code § 226.7 (Unpaid Rest Period Premiums); (4) Violation of California Labor Code §§ 1194, 1197, and 1197.1 (Unpaid Minimum Wages); (5) Violation of California Labor Code §§ 201 and 202 (Final Wages Not Timely Paid); (6) Violation of California Labor Code § 204 (Wages Not Timely Paid During Employment); (7) Violation of California Labor Code § 226(a) (Non-Compliant Wage Statements); (8) Violation of California Labor Code § 1174(d) (Failure To Keep Requisite Payroll Records); (9) Violation of California Labor Code §§ 2800 and 2802 (Unreimbursed Business Expenses); and (10) Violation of California Business & Professions Code § 17200, *et seq*. *Id.*

/ / /

---

[1] The court cites documents by the page numbers added by the court's CM/ECF system, rather than any page numbers that appear within the documents natively.

Defendants removed the action to federal court on June 14, 2024.  Dkt. 1 ("NOR").  In the Notice of Removal, Defendants argue this court has jurisdiction over the action under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d).  *Id.*  Based on Defendants' own investigations and calculations, Defendants state they determined there are more than 100 current and former employees who worked for them in California during the four-year period prior to the filing of the Complaint, and the amount in controversy exceeds $5,000,000.  *Id.* at 9, 13–22.  In response, Plaintiff argues removal is improper because Defendants failed to prove to the required level of certainty that the amount in controversy exceeds the sum of $5,000,000.  Mot. at 2.

## DISCUSSION

### I.    Legal Standard

A defendant may remove an action from state court to federal court if the plaintiff could have originally filed the action in federal court.  *See* 28 U.S.C. § 1441(a).  CAFA provides federal subject matter jurisdiction if (1) the proposed plaintiff class is not less than 100 members, (2) the parties are minimally diverse, and (3) the aggregate amount in controversy exceeds $5 million.  28 U.S.C. § 1332(d)(2), (5)(B).  "Congress intended CAFA to be interpreted expansively."  *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015).

The party seeking removal bears the burden of establishing federal subject matter jurisdiction under CAFA.  *Abrego v. Dow Chem. Co.*, 443 F.3d 676, 683 (9th Cir. 2006).  Where the amount in controversy is not apparent from the face of the complaint, the removing party "must prove by a preponderance of the evidence that the amount in controversy requirement [under CAFA] has been met."  *Id.*  While generally, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold," where a plaintiff contests the amount in controversy put forth by the defendant, "[e]vidence establishing the amount is required…."  *Dart Basin Operating Co. v. Owens*, 574 U.S.

81, 89 (2014).  The parties, thus, "may submit evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'"  *Ibarra*, 775 F.3d at 1197 (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)).  "Under this system, a defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions."  *Id.*

**II.    Analysis**

As the parties do not contest CAFA's jurisdictional requirements of minimum diversity and class numerosity, the sole remaining dispute is whether CAFA's requirement that the amount in controversy exceed $5 million is met.  *See* Mot. at 10–19; Opp'n at 8–21.

Defendants submitted evidence in both their Notice of Removal and Opposition to the Motion, demonstrating that the amount in controversy exceeds $5 million.  *See generally* NOR; Opp'n; Dkt. 22-1; Dkt. 22-2.  Specifically, Defendants estimate the amount in controversy—after considering waiting time penalties, meal breaks, rest breaks, and inaccurate wage statements—is between $9,284,005 and $21,926,135.  NOR at 22; *see* Opp'n at 21 (estimating the amount in controversy is at least $14,834,715).  Defendants calculate this figure based on four of Plaintiff's ten causes of action, the estimated class sizes for each, the applicable limitation periods and statutory damages, and average hourly pay rates.  NOR at 13–22; Opp'n at 8–21.

Plaintiff argues that Defendants failed to provide admissible evidence to support their amount in controversy calculations and that, even if the evidence submitted were admissible, Defendants incorrectly calculated the amount in controversy.  Mot. at 11–20.  The court disagrees.  Defendants supplied various declarations to support their calculations, *see* Dkt. 22-1; Dkt. 22-2, which the court finds are sufficient to meet Defendants' burden, *see Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 397–98 (9th Cir. 2010).

/ / /

Plaintiff alleges that during the relevant time period, "Defendants intentionally and willfully required Plaintiff and the other class members to work during meal periods and failed to compensate Plaintiff and the other class members the full meal period premium for work performed during meal periods." Compl. ¶ 68. Plaintiff, however, does not provide an estimate of the frequency of these violations.

When a complaint "provides little information about the frequency with which [d]efendant allegedly violated California labor laws, [d]efendant may reasonably choose to estimate the frequency of violations when calculating the amount in controversy. *Noriesta v. Konica Minolta Bus. Sols. U.S.A., Inc.*, Case No. 5:19-cv-00839-DOC (SPx), 2019 WL 7987117, at *6 (C.D. Cal. 2019) (finding a 100% assumed violation rate when the complaint did not contain any qualifying words on the frequency of violations). Here, even assuming a lower violation rate, the meal period penalties would amount to approximately $1,887,545 ($13 lowest minimum hourly rate x 725,979 eligible shifts x 20% violation rate) while the rest period penalties would amount to an additional $1,935,076 ($13 lowest minimum hourly rate x 744,260 eligible shifts x 20% violation rate). Opp'n at 13–14. The total amount in controversy for these violations would be approximately $3,822,621. *Id*. After reviewing the parties' papers, the court is satisfied that Defendants' calculation is based on reasonable assumptions given their estimations on the violation rate.

In addition, Plaintiff alleges that Defendants "intentionally and willfully failed to pay Plaintiff and the other class members who are no longer employed by Defendants their wages, earned and unpaid, within seventy-two (72) hours of their leaving Defendants' employ." Compl. ¶ 89. Defendants conservatively estimate the amount in controversy for any waiting time damages would be approximately $2,033,724 (620 out of the 1,240 former employees x $109.34 per day [7.81 hours per day x $14 lowest minimum hourly wage] x 30 days). Opp'n at 19. After reviewing the parties' papers, the court is satisfied Defendants' calculation is based on reasonable assumptions because, if even half of the putative class were denied

compensation for one hour of unpaid minimum or overtime wages, one unpaid meal period, or one unpaid rest period during the entirety of their employment, they could be entitled to waiting time penalties for up to 30 days. *See* Cal. Lab. Code § 203.

Based on the amount in controversy from these two claims alone, the court concludes Defendants have met their burden to establish federal subject matter jurisdiction under CAFA.[2] *See Ibarra*, 775 F.3d at 1197 (noting the court is to test whether CAFA's requirements are met by a preponderance of the evidence by considering "the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure").

## CONCLUSION

For the foregoing reasons, the court DENIES Plaintiff's Motion in its entirety.

IT IS SO ORDERED.

Dated: January 21, 2025

FERNANDO L. AENLLE-ROCHA
United States District Judge

---

[2] Because these two claims alone would be sufficient to meet the amount in controversy, the court need not consider Plaintiff's other claims. Nevertheless, the court notes Defendants have calculated there are at least approximately seven million dollars in potential damages for Plaintiff's claims regarding Defendants' alleged wage statement violations and Plaintiff's claim for attorney's fees. Opp'n at 16, 20.